IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROGER GOODEN,

        Petitioner,

v.                                                Civil Action No. 2:13cv37
                                                    Criminal Action No. 2:11cr33-05
                                                      (Judge Bailey)

UNITED STATES OF AMERICA,

        Respondent.

**REPORT AND RECOMMENDATION**

**I. Introduction**

On May 23, 2013, the petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Dkt.# 331). Subsequently, on July 12, 2013, petitioner filed a memorandum in support. (Dkt.# 357). On July 22, 2013, the undersigned made a preliminary review of the petition and found that summary dismissal was not warranted; accordingly, the respondent was directed to file an answer. On August 19, 2013, the respondent filed a motion to dismiss and a response in opposition. The Court issued a Roseboro[1] Notice on August 20, 2013. On September 10, 2013, the petitioner filed a reply, titled *Pro Se* Motion in Opposition to Government's Motion to Dismiss.

**II. Facts**

**A. Conviction and Sentence**

Petitioner was named in three methamphetamine-related counts of a sixty-five count indictment on December 13, 2011. On February 14, 2012, petitioner signed a plea agreement, agreeing to plead guilty to Count Sixty-Two, Possession of Pseudoephedrine to be Used in the Manufacture of Methamphetamine, in violation of Title 21, U.S.C. § 841(c)(2). (Dkt.# 137 at 1). The maximum penalty for the offense being pled to was specified as imprisonment for a period of not

---

[1] Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975).

more than twenty (20) years, a fine of $250,000.00, and a three-year term of supervised release. (Id. at 2). The parties stipulated and agreed that petitioner's total drug relevant conduct was between ten (10) and forty (4) grams of pseudoephedrine. (Id. at 4). In the plea agreement, the petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the agreement states:

> 14. The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions made by the United States in this plea agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence which is consistent with a Base Offense Level 26 or lower, or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. The defendant also waives the right to challenge the sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, the defendant's waiver contained in this paragraph will be voided provided the defendant complies with the Rules of Appellate Procedure.

(Id).

On February 21, 2012, the petitioner, then aged 25 with an eleventh grade education, entered his plea in open court. (Dkt.# 366 at 13 - 14). Petitioner testified that he could read, write and understand English; he denied any treatment for mental illness, but reported receiving drug counseling within the previous six months. (Id. at 14 – 15). Petitioner indicated he had used methamphetamine since approximately age 15 but that his last use was in approximately September, 2011, and he viewed his recent drug counseling "a major success." (Id. at 13 and 15). Further, he testified that he had not had any medication, drug or alcohol within the previous 24 hours. (Id. at 16). During the plea hearing, the Assistant U.S. Attorney ("AUSA") read aloud in open court each paragraph of the plea agreement, including the paragraph 14, *supra*. (Id. at 5 - 9). The Court specifically asked petitioner if he and his attorney had discussed the waiver of his appellate and post-conviction relief rights and petitioner replied "[y]es, Your Honor." (Id. at 21 - 22). The Court asked petitioner if he understood that if the District Judge used a guideline level 26 or lower in sentencing him, that he would be giving up the right to appeal or collaterally challenge the sentence he received,

2

and petitioner replied "[y]es, Your Honor." (Id. at 22). The Court asked petitioner if he and his attorney had gone over the plea agreement together before signing it, and petitioner said that they had. (Id. at 21 - 24). The Court informed petitioner that the maximum sentence for the crime which he was pleading could be imprisonment for a period of not more than twenty (20) years, a fine of up to $250,000.00 and a term of at least three years of supervised release (Id. at 20), but that the ultimate sentence he received could be greater than that estimated by his counsel; petitioner indicated that he understood. (Id. at 25 - 28). The Court specifically asked petitioner whether he understood that the length of his sentence could not be determined by anyone at that time, and it would not be possible to know until the sentencing hearing and petitioner said "[y]es, Your Honor." (Id. at 30 - 33). The Court then summarized the rights petitioner was giving up by pleading guilty. (Id. at 34 - 35).

Before the factual basis for the plea was presented, the petitioner entered his plea. (Id. at 66). To establish a factual basis for the plea, the Government presented the testimony of Deputy Rocky C. Hebb of the Upshur County Sheriff's Office. (Id. at 36 – 39). Petitioner did not object. (Id. at 39 - 40). The Court asked petitioner if he believed that he was, in fact, guilty of Count Sixty-Two of the indictment and petitioner advised the Court that he was. (Id. at 29). The Court then asked petitioner if his lawyer had done a good job representing him and he responded "[y]es, sir." (Id. at 23). The Court further asked petitioner whether he thought that there was anything he thought that his lawyer left undone, or anything that he thought his lawyer did improperly, and petitioner denied that there was. (Id. at 18 - 23). At the conclusion of the hearing, the Court determined that petitioner was competent, that he had made his plea freely and voluntarily, with full understanding of its consequences, and that the elements of the crime in Count One had been established beyond a reasonable doubt. (Id. at 40). Petitioner did not object to the Court's finding.

On May 23, 2012, petitioner appeared with counsel before the court for sentencing. Defense counsel entered no objections to the PSR; petitioner did not protest. (Dkt.# 364 at 3). Petitioner was found to have a base offense level of 26. (Id. at 4). After a three-level methamphetamine-related

3

enhancement for a substantial risk of harm to human life and the environment, petitioner had an adjusted offense level of 29, less a two-level reduction for acceptance of responsibility. The Court granted the Government's motion for a third level reduction for timely acceptance of responsibility, resulting in a total offense level of 26. (Id.). With a criminal history category of II, the Court found that the Guidelines called for a sentencing range of seventy to eighty-seven months of imprisonment. (Id. at 4 - 5). Petitioner declined the opportunity to allocute. (Id. at 10). Defense counsel made an impassioned argument for a downward departure to a sentence of "thirty (30) some months," asking for leniency based on petitioner's youth; troubled childhood; repeated placement in juvenile facilities; early addiction to methamphetamine with its detrimental effect on cognitive development; petitioner's acceptance of responsibility; progress in counseling; and success in avoiding drugs and the companions of his former lifestyle since then. (Id. at 5 – 10). The Government opposed the motion but recommended a sentence at the lowest end of the guideline. (Id. at 10).

Taking all necessary information into consideration, the Court declined to grant petitioner's motion for a downward departure, but instead sentenced petitioner to the lowest end of the guidelines, a term of 70 months imprisonment, to be followed by a three year term of supervised release. (Id. at 10 - 11). The Court recommended that while incarcerated, petitioner participate in the Bureau of Prison's long-term residential drug abuse program ("RDAP"). (Id.). The Court reiterated the application of the appellate rights waiver in petitioner's plea agreement, but advised petitioner that if he believed his waiver was unenforceable; his plea somehow unlawful or involuntary; or if there were some other defect in the proceedings not waived by his guilty plea, what the time frame was for filing a notice of appeal was, and explained his *in forma pauperis* rights. (Id. at 15).

**B. Direct Appeal**

Petitioner did not file an appeal.

**C. Federal Habeas Corpus**

**Petitioner's Contentions (Dkt.# 331 and 357)**

Petitioner raises three grounds, reordered here for clarity, contending that:

1) because his sentence was enhanced based on facts that he did not plead guilty to, the enhancement was a result of judicial fact-finding.

Further, counsel was ineffective:

2) before and during sentencing, because despite his "unequivocal request," counsel failed to object to 3-level guideline enhancement; and

3) despite his request to counsel made directly after sentencing, that counsel file an appeal on his behalf, counsel failed to do so.

As relief, he requests that his sentence be vacated, his appellate rights time period be reinstated, and that he be granted an evidentiary hearing.

**Government's Response (Dkt.# 367 and 368)**

The government contends that the petition should be dismissed because petitioner validly waived his appellate and collateral attack rights in a valid Rule 11 hearing. Under such circumstances, upon the government's motion to dismiss, the waiver should be enforced without requiring the government to brief the merits.

The government further contends that it cannot meaningfully respond to petitioner's allegations of ineffective assistance, because upon inquiry to petitioner's former defense counsel, counsel declined to respond.

**Petitioner's Reply (Dkt.# 372)**

Petitioner reiterates his arguments and attempts to refute the government's position on the same. He requests an evidentiary hearing with appointed counsel.

### III. Analysis

**A. Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United

States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. §2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D. Va Jan. 4, 2006).

**B. Waiver**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

6

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel ("IAC") claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005)(internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D. Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be

pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

The unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement, and petitioner said that he did. (Dkt.# 366 at 21 – 22). Further, petitioner specifically testified that he understood that, incident to paragraph 14 of his plea agreement, he was waiving his right to appeal his sentence or to collaterally attack it, if the District Judge used a level 26 or lower under the guidelines in sentencing him. (Id.). His base offense guideline level was 26 and his total offense level was 26. (Dkt.# 364 at 4). The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and voluntarily

9

waived the right to collaterally attack his sentence and to file this § 2255 motion, precluding review of any claims of ineffective assistance arising before the entry of the plea.

However, a waiver analysis may not be dispositive of all of the issues in this petition. Because petitioner has also alleged that counsel was ineffective after the entry of the guilty plea, and that such ineffectiveness enhanced his sentence, those claims will be given review.

**C. <u>Ineffective Assistance of Counsel</u>**

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." <u>Strickland</u> at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. <u>Id.</u> at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in <u>Strickland</u>, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." <u>Hill v. Lockhart</u>, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985) (footnote omitted); <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. <u>Strickland</u> 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. <u>See</u> <u>Hunt v.</u>

Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

**Grounds One and Two: Whether Counsel's Performance was Ineffective Before and During Sentencing, for Failing to Object to the Three-Level Guideline Enhancement, and Whether Petitioner's Enhanced Sentence Violates Booker**

Petitioner contends that prior to and during the sentencing hearing, he "unequivocally" advised counsel that he wanted to object to the three-level methamphetamine enhancement for its substantial risk of harm to human life and the environment. Further, he contends that because his sentence was enhanced based on facts that he did not plead guilty to, i.e., the finding of a substantial risk of harm to human life and the environment arising out of his pseudoephedrine possession, that the enhancement was a result of "judicial fact-finding."

Here, without actually citing to the case, petitioner is effectively claiming that his sentence violates United States v. Booker, 543 U.S. 220 (2005). In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held "other than a fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." In Blakely v. Washington, 542 U.S. 296, 301-303 (2004), the Supreme Court applied Apprendi to the State of Washington's sentencing scheme and found that the imposition of sentencing enhancements based solely on factual findings made by the court and neither admitted by the defendant or found by a jury violated the Sixth Amendment. Blakely was in turn applied to the federal sentencing guidelines in United States v. Booker, 543 U.S. 220, 243 (2005).

The Court finds petitioner's argument is without merit. Pursuant to 21 U.S.C. § 841(b)(1)(C), the maximum penalty for a violation of Title 21, U.S.C. § 841(c)(2) is imprisonment for a period of not more than twenty (20) years. Petitioner was sentenced to seventy months, or 5.83 years, on Count Sixty-Two, the bottom of the Guideline, thus his sentence did not exceed the statutory maximum. Accordingly, Booker is inapplicable.

Petitioner's next argument is that at sentencing, counsel failed to heed his unequivocal instruction to object to the 3-level enhancement. He claims the enhancement was based solely on a co-defendant's statement to the police that the fumes from petitioner's cooking methamphetamine burned her eyes, and that because "there were no medical records or expert tests/testamonies [sic]" in the record to prove her eye damage, there was no grounds for the enhancement. He avers that "I would have addressed the enhancement Myself [sic] if Mr. Wolfe would have told Me [sic] that he was not going to object to the enhancement recommended in the Presentencing Report."[2] He asserts that if only counsel had made the objections, the Court would not have adopted the recommendation.

First, contrary to petitioner's claim that there was insufficient evidence in the record to support the enhancement, U.S. Sentencing Guidelines Manual §2D1.1, Application Note 20 identifies four factors a sentencing court must assess, to determine whether an offense has created a substantial risk of harm to human life or the environment:

> (i) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.
>
> (ii) The manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous or toxic substances.
>
> (iii) The duration of the offense, and the extent of the "manufacturing operation.
>
> (iv) The location of the laboratory (*e.g.*, whether the laboratory is located in a residential neighborhood or a remote area), and the number of human lives placed at substantial risk of harm.

U.S.S.G. Manual §2D1.1 Application n.20; see also United States v. Pinnow, 469 F.3d 1153, 1156 (8th Cir. 2006); United States v. Williams, 514 Fed. Appx. 379, *4 (4th Cir. 2013). Further, while a district court must consider all four factors, it need not find that all are met in order to apply the enhancement. Williams, *supra* at *4, *quoting* United States v. Houchins, 364 F.3d at 182, 188 n.9 (4th Cir. 2004) *vacated on other grounds,* United States v. Houchins, 200 Fed. Appx. 259 (4th Cir. 2006).

---

[2] Dkt.# 357 at 9.

Here, in his plea agreement, petitioner stipulated to a total drug relevant conduct of between 10 – 40 grams of pseudoephedrine, and admitted to having purchased pseudoephedrine for use in the manufacture of methamphetamine "'countless' times . . . [over a] ten year[] [period]."[3] In the PSR, the probation officer summarized the findings of the investigating officers, Deputies Rocky C. Hebb and Troy Brady of the Upshur County Sheriff's Office, after they interviewed the 8 defendants in this case, along with other witnesses. The officers reported that petitioner lived with his stepfather, an alcoholic, at his home in the country.[4] Petitioner was reported to have manufactured methamphetamine on a daily basis in the basement at his step-father's home.[5] The Probation Officer's summary of findings on the issue of substantial risk to human life or the environment were that:

> . . . other individuals advised the investigating officer that the defendant was making methamphetamine at the Oldaker residence. The defendant was with Anthony Carson at his house in the process of manufacturing methamphetamine when the bottle exploded and it was thrown outside. The defendant was known to manufacture methamphetamine every day at the Oldaker residence. One witness advised the officer that she had seen hoses, salt, liquid Drano, and a Sudafed pill crusher at the house. Also the defendant and Christopher Arbogast would shake the bottle up, place it under the porch, and go into the basement and cook methamphetamine. On one occasion, a witness was in the basement and saw a bag with liquid and fog in it that smelled so bad that you had to hold your nose when in the room.

Dkt.# 279, ¶53 at 13.

It is clear from the investigation that there were sufficient grounds for the Court to find that petitioner's methamphetamine activities posed a substantial risk of harm to human life or the environment.

Second, petitioner's claim that he objected to the 3-level sentencing enhancement so much that he would have addressed the enhancement himself had he known counsel did not intend to is

---

[3] Dkt.# 137 at 4.

[4] Dkt.# 279, ¶31 and ¶33 at 8.

[5] Dkt.# 279, ¶47 at 11 and ¶53 at 13.

13

belied by the record. The record reveals that each time petitioner was given the opportunity to dispute the findings that supported the enhancement, or the enhancement itself, petitioner never made any attempt to do so. At petitioner's plea hearing, after hearing the testimony of Deputy Hebb of the Upshur County Sheriff's Office, providing a factual basis for the plea, the Court inquired of petitioner:

> THE COURT: Mr. Gooden, were you able to hear and follow the testimony of Deputy Hobb?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is there anything about your involvement as described by Deputy Hebb in the intentional and knowing possession of pseudoephedrine knowing that it would be used in the manufacture of methamphetamine that you disagreed with?
>
> THE DEFENDANT: No, sir.

Dkt.# 366 at 39 – 40.

On May 14, 2012, nine days before the May 23, 2012 sentencing hearing, counsel filed a sentencing memorandum on petitioner's behalf, arguing for a downward departure, acknowledging that

> *[w]e agree with the Probation Office's calculation of Mr. Gooden's sentencing guidelines* in this case. Pursuant to U.S.S.G. §2D1.1(c)(7), the base level offense [sic] is 26. An enhancement under U.S.S.G. §2d1.1(b)(13(C)(ii) [sic] results in an increase of three levels and with an adjustment for Acceptance of Responsibility, the offense level is reduce three levels for a total offense level of 26.

Dkt.# 244 at 2 (emphasis added).

Further, at sentencing, the Court inquired in this regard:

THE COURT: Mr. Gooden, have you received the Presentence Report and gone over it with your lawyer?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has the Government received and reviewed the Presentence Report?

MR. WARNER: Yes, sir.

THE COURT: Are there any issues in dispute with regard to the Presentence Report?

> MR. WOLFE: None, Your Honor.
>
> THE COURT: Steve?
>
> MR. WARNER: No, sir.
>
> THE COURT: The Presentence report is accepted and, ORDERED, filed and made a part of the record herein.

Dkt.# 364 at 3.

> The Court went on to announce its tentative findings as to the applicable guidelines:
>
> (THE COURT): The base offense level is 26, plus a three level enhancement for a substantial risk of harm to human life and the environment resulting in an adjusted offense level of 29; less two levels for acceptance of responsibility. What's the Government's position with regard to a third level?
>
> MR. WARNER: Your Honor, his acceptance certainly was timely and we'd move for that.
>
> THE COURT: The Government's motion for a third level is granted, resulting in a total offense level of 26. The Criminal History Category is II. With a total offense level of 26 and a Criminal History Category of II, the guidelines call for incarceration of 70 to 87 months[.]

Id. at 4-5.

Finally, after counsel's failure to object to the 3-level enhancement and his vigorous argument in favor of a variant sentence of "thirty (30) some months," when given the opportunity to speak directly to the Court, petitioner declined to do so.[6]

Accordingly, pPetitioner's claim that counsel was ineffective at the sentencing hearing for going against his wishes and not challenging the 3-level enhancement is belied by the record. Counsel had no grounds to challenge the USSG-mandated sentence enhancement for substantial harm to human life or the environment. Instead, he argued vigorously on petitioner's behalf, attempting to persuade the Court to depart downward from the guidelines. Simply because the Court ruled against counsel and gave petitioner a sentence within the guideline range does not render

---
[6] Dkt.# 364 at 10.

counsel's performance defective. Counsel had no basis for objecting to a USSG-mandated enhanced sentence and thus cannot be found ineffective for failing to do so. Moreover, petitioner admitted under oath at his plea hearing that he and counsel repeatedly reviewed the evidence against him; the elements of the crime; and the maximum penalty he faced if he went to trial, before he decided to accept the plea. After concluding that the government had sufficient evidence to prove its case, petitioner admitted it was his "own idea" and his "own decision" to take the plea.[7] Petitioner's 5.83-year sentence is well below the maximum that he could have received, and is a result of his own criminal history, not because of anything that counsel did or failed to do.

Finally, it should be noted that, generally speaking, claims of error regarding application of the guidelines cannot be raised in a habeas petition. United States v. Pregent, 190 F.3d 279, 283 - 84 (4th Cir. 1999); United States v. Mikalajunas, 186 F.3d 490, 495 - 96 (4th Cir. 1999). A claim not attacking the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979). Because an alleged misapplication of USSG sentencing requirements does not constitute a miscarriage of justice, Mikalajunas, *supra* at 495 (4th Cir. 1999), petitioner's claim is barred. See Stewart v. United States, 2006 U.S. Dist. LEXIS 54553 at *13-14 (E.D. Va. July 21, 2006).

Finally, because here, petitioner wove his *de facto* Booker claim that his enhanced sentence was a result of "judicial fact-finding" claim into a claim of ineffective assistance of counsel, petitioner also has the burden of demonstrating counsel's deficient performance and how it prejudiced him. Because petitioner cannot establish the underlying claim, petitioner cannot establish that counsel was deficient or that he was prejudiced by counsel's failure to challenge the issue. Furthermore, despite petitioner's attempt to recharacterize the claim as an ineffective assistance of counsel claim, is essentially a thinly-disguised attempt to evade his waiver of habeas relief rights by

---

[7] Dkt.# 366 at 18 – 20.

challenging his sentence or the manner in which it was determined. As such, it falls squarely within his waiver.

Accordingly, I recommend this petition be denied on all grounds except the allegation of failure to file notice of appeal hereinafter addressed.

**Ground Three: Whether Counsel's Performance was Ineffective After Sentencing, for Failing to File an Appeal on Petitioner's Behalf when Petitioner Requested that Counsel Do So.**

Petitioner asserts that counsel was ineffective for failing to file an appeal on his behalf after specifically being instructed to do so.

The Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). In rendering this decision, the Court opined:

> Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S.Ct.917, 8 L.E.2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 917, 8 L.Ed.2d 811 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious. Anders v. California, 386 U.S.738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Id. at 41.

Further, in Roe v. Flores-Ortega, 528 U.S. 470 (2000), the United States Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Flores-Ortega, *supra* at 478.

In this case, petitioner asserts that he "expressly requested" that counsel file a notice of appeal, directly after the sentencing hearing. He avers that from his understanding, counsel was

going to file the appeal. Thereafter, when he tried to contact counsel by letter and by phone, counsel did not respond or take his calls. He avers that he wrote several letters to counsel about the appeal, but did not keep copies of any of them, and that only after he had his family call the Fourth Circuit Court of Appeals to inquire about the status of the appeal, did he learn that no appeal had ever been filed.

The government asserts that it cannot meaningfully respond to petitioner's allegations of ineffective assistance, because upon a request to petitioner's former counsel for information regarding petitioner's claim, counsel declined to respond, citing ABA Formal Opinion 10-456 and attorney-client privilege.

Because the government was not privy to the confidential exchanges that took place between the petitioner and his attorney, and the government has been unable to provide any information from the petitioner's attorney regarding what instructions, if any, he received regarding an appeal, the petitioner's motion and the government's response do not conclusively establish that petitioner is entitled to no relief. Accordingly, I find that an evidentiary hearing is necessary to determine whether petitioner requested his attorney file an appeal and whether counsel ignored or refused such instructions. See 28 U.S.C. § 2255 (providing in pertinent part that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); see also United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000).

An evidentiary hearing, solely on the issue of whether petitioner instructed his counsel to file an appeal shall be held at **2:00 p.m., on May 22, 2014,** in the United States Magistrate Judge Courtroom, Room 433, 4th Floor, U.S. Courthouse, Wheeling, West Virginia. Petitioner shall appear by telephone from his place of incarceration. Any other party, counsel or witness who resides or

whose principal office is more than 40 miles from the Wheeling point of court may appear by telephone.

**Brendan S. Leary, Esq**. is appointed to represent petitioner at the evidentiary hearing.

## IV. Recommendation

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be denied and dismissed from the docket because petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack the sentence with the exception of an evidentiary hearing to determine whether petitioner requested his attorney to file an appeal and whether counsel ignored or refused instructions.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, **or by April 9, 2014**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to file timely objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Report and Recommendation to counsel of record via electronic means.

DATED: March 26, 2014

    /s/ James E. Seibert_____
    JAMES E. SEIBERT
    UNITED STATES MAGISTRATE JUDGE